UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE SHUMPERT,

        Plaintiff,

v.

GENERAL MOTORS LIFE AND
DISABILITY BENEFITS PROGRAM FOR
HOURLY EMPLOYEES,

        Defendant.

_____/

CASE NO. 2:12-cv-14786

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD, DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD, AND AFFIRMING THE DECISION OF THE PLAN ADMINISTRATOR**

This matter is before the Court on the parties' cross-motions for judgment on the administrative record. Defendant, General Motors Life and Disability Benefits Program for Hourly Employees ("GM"), also seeks to recover overpaid benefits. Plaintiff, Maurice Shumpert, filed the instant action challenging termination of his disability benefits under GM's self-funded benefits program subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The matter is fully briefed, and the Court finds that argument will not aid in the resolution of this matter. See E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, Defendant's motion is **GRANTED**, Plaintiff's motion is **DENIED**, and the decision of the plan administrator is **AFFIRMED**. **IT IS FURTHER ORDERED** that **DEFENDANT** file its motion for summary judgment on its counterclaim for overpaid benefits with this Court by **MAY 2, 2014**.

**I.	STATEMENT OF FACTS**

Plaintiff Maurice Shumpert worked as a stamping press operator at GM's Flint Metal Fabricating plant as an hourly employee from 1995 to 2009. (A.R. 1215). GM provides its employees a welfare benefit plan (the "Plan"), which is self-funded by GM, but administered by Sedgwick Claims Management Services. (A.R. 1, 4-5). The Plan is part of the collective bargaining agreement between GM and several unions of which Shumpert is a member.

During Shumpert's employment, he received treatment for chronic renal failure, proteinuria, and hypertension. Because of these conditions and various work restrictions, Shumpert worked in several different positions, including welding technician, product system technician, and team operator. In June 2004, Shumpert underwent a kidney transplant, but returned to work in October 2005 with restrictions from his treating physician, Dr. Jag Mirchandani. (A.R. 345). Shumpert continued to work under various restrictions from 2005 to 2008. (A.R. 505-06).

In February 2008, Shumpert began complaining of fatigue and lower back pain, and ceased working. GM physician, Dr. Donna Smith, determined that Shumpert could not work any job at the Flint location, which automatically triggered Sickness and Accident ("S&A") benefits. (A.R. 332-33). On February 21, 2008, Shumpert's status was listed as "No Job Available Within Restrictions." (Id.) This status was extended until July 28, 2008, but later discontinued after Shumpert failed to attend a follow-up examination. (A.R. 305).

On August 20, 2008, Dr. Smith examined Shumpert and found that he could return to work with a restriction that he lift no more than fifteen pounds. (A.R. 356-57).

GM found a suitable job for Shumpert at the Flint location, but Shumpert did not return to work. (A.R. 302). On August 28, 2008, GM notified him that his job may be in jeopardy if he continued to miss work. (Id.) In September, GM received physician statements from Shumpert's treating physician, Dr. Mirchandani, stating that Shumpert could not return to work until July 2014 due to "easy fatigability, headaches, and susceptibility to infection." (A.R. 359, 361). Consequently, Sedgwick provisionally approved S&A benefits pending investigation. (A.R. 295).

In December 2008, Dr. Smith and Dr. Mirchandani spoke about Shumpert's treatment. Dr. Mirchandani limited Shumpert to lifting fifteen pounds or less and working "at a slow pace." (A.R. 378). He also stated that Shumpert is having difficulty "keeping up with the line due to fatigue from renal disease." (Id.) Sedgwick then scheduled a Fitness for Duty medical examination in January 2009; however, Shumpert failed to attend. (A.R. 382). A month later, Shumpert's S&A benefits expired.

On February 5, 2009, the Social Security Administration denied Shumpert's claim for disability insurance benefits. (A.R. 69). The next day, Shumpert notified GM that he would not return to work and applied for Extended Disability ("ED") benefits. (A.R. 383). GM then requested an Impartial Medical Opinion ("IMO") conducted by an impartial medical examiner, which is pre-selected and bargained-for by GM and Shumpert's union. The IMOs are "final and binding" on all parties regarding the existence of disability under the Plan. (A.R. 1399-1400). Shumpert failed to show up for the first scheduled IMO.

On April 16, 2009, Dr. Marius Vidinas conducted the rescheduled IMO. In examining Shumpert, he concluded that he could not return to work because of back

3

pain and chronic kidney disease. (A.R. 85-86). He recommended that Shumpert be reevaluated in a month. Four months later, Dr. Joseph Kaiser, a nephrologist, conducted the follow-up IMO on August 4, 2009. (A.R. 89). He noted that Shumpert's kidney function was normal and that his hypertension was controlled with medication. (A.R. 94). Dr. Kaiser's report did not mention fatigue or back pain. In conclusion, he stated: "I see no reason for him to be unable to work at his job based on his examination and/or because of his renal disease or transplant, which is normal." (Id.) He recommended Shumpert return to work immediately.

Based on the IMO, Sedgwick terminated ED benefits effective August 5, 2009. Shumpert returned to work on August 6, but called in the next day to claim disability due to back spasms and his inability to keep up with the pace of the work. (A.R. 1170). He listed Dr. Abber Fayyad as his treating physician. Sedgwick then phoned Dr. Fayyad, who denied that he restricted Shumpert from working, suggesting instead that Dr. Mirchandani provided the restrictions. (A.R. 1166). Dr. Fayyad did note that he examined Shumpert on August 11, 2009, but that Shumpert did not complain of back pain. (Id.) Sedgwick then notified Shumpert that he must return to work because he did not have a physician to certify his disability. However, Shumpert did not return, and GM terminated his employment and disability coverage on September 3, 2009. (A.R. 1160).

On September 17, 2009, Dr. Fayyad sent Sedgwick a statement restricting Shumpert's ability to work, but indicating that he was capable of sedentary work. (A.R. 986). Dr. Fayyad also noted that Shumpert's medication makes him fatigued. In the comments section, Dr. Fayyad stated that Dr. Mirchandani also wanted Shumpert on "sick leave" because of a high level of creatinine. (A.R. 987).

4

In accordance with the Plan, registered nurse Margaret Griffin conducted a file review of Shumpert's records on September 25, 2009. (A.R. 1152-54). Griffin determined that Shumpert's creatinine levels were normal and that there was insufficient medical evidence to support the disability claim. Therefore, Sedgwick denied the claim on September 28, 2009. (A.R. 1151).

On September 30, 2009, Dr. Mirchandani sent Sedgwick a medical statement that Shumpert suffered from "easy fatigability, headaches, susceptibility to infection." (A.R. 990). It also indicated Shumpert could lift up to fifteen pounds and was capable of sedentary work. The evidence was sent back to nurse Margaret Griffin for review. In addition to Dr. Mirchandani's statement, Griffin reviewed lab reports, radiographs, and treatment notes from Dr. Mirchandani and Dr. Fayyad, but found no new objective medical evidence to support Shumpert's claim of disability. (A.R. 1144). On October 20, 2009, Shumpert's claim was denied by letter.

Shumpert appealed the denial and included a letter from Dr. Mirchandani dated October 22, 2009. (A.R. 191). The letter indicated that "[p]atient is not allowed to stand for more than one hour, work on a fast paced assembly line or lift any heavy objects greater than 20 pounds." (Id.) There was no mention of back pain or fatigue, but the letter stated that Shumpert is "immune-compromised with increased susceptibility for infections." (Id.)

The letter was referred to Griffin for review on November 10, 2009. Griffin found the letter did not provide any new objective medical evidence to support total disability. Two additional medical specialists, Kathleen Hicks and Kathy Sells, both reviewed the

evidence and agreed with Griffin's findings. (A.R. 1123). Sedgwick upheld its denial on November 16, 2009. (A.R. 889-91).

On December 10, 2009, Dr. Mirchandani sent another medical statement to Sedgwick, advising that Shumpert is unable to work and susceptible to infection. (A.R. 905). Shumpert's file was then sent for peer-to-peer review through Network Medical Review, an independent medical review company, which selected Dr. Michael Gross to conduct the review. Dr. Gross spoke with Dr. Mirchandani over the phone regarding Shumpert's medical condition. Dr. Mirchandani stated that Shumpert's kidney function was normal, his blood pressure was normal, and that "he could in fact work." (A.R. 974). In referring to Dr. Mirchandani's statement, Dr. Gross noted, "subjectively the patient tells [Dr. Mirchandani] that he cannot work on a fast paced assembly line or lift any heavy objects greater than 20 pounds, but objectively there is no information in the file to indicate that he cannot do this." (Id.) Shumpert's creatinine levels were also normal. Although Dr. Gross noted that Shumpert "has some back pain" unrelated to his kidney transplant, he concluded that Shumpert could return to work. (A.R. 975).

On April 13, 2010, Shumpert appealed, claiming that he cannot do sedentary work. (A.R. 906-12). Sedgwick directed Shumpert to contact his union representative in accordance with the collectively bargained appeal process. (A.R. 888). In August 2010, Sedgwick reviewed Shumpert's file and upheld its decision. Soon thereafter, GM received notice that Shumpert was awarded Social Security Disability Insurance Benefits effective March 1, 2008, at which time GM requested repayment of nearly $30,000 in disability benefits. (A.R. 855).

6

On February 11, 2011, Shumpert appealed again with support of the union. The union representative submitted a letter on Shumpert's behalf, arguing disability based on "tender thoracic spine and obesity" and that he "is unable to predictably complete his work responsibilities," citing fatigue and back pain. (A.R. 885). Sedgwick, GM, and the union met on March 17, 2011, to discuss Shumpert's claim. Less than a week later, Sedgwick upheld its denial of benefits, stating that "no information has been provided that substantiates disability and prevents Mr. Shumpert from working." (A.R. 873).

## II.   APPROPRIATE STANDARD OF REVIEW

Motions for judgment on the administrative record in an ERISA action are not akin to motions for summary judgment under Fed. R. Civ. P. 56(a). See Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 618 (6th Cir. 1998) ("This standard of review does not neatly fit under either Rule 52 or Rule 56, but is a specially fashioned rule designed to carry out Congress's intent under ERISA."). Accordingly, a district court reviews an ERISA plan administrator's denial of benefits *de novo* unless the plan grants the administrator discretionary authority to determine eligibility for benefits. Cox v. Standard Ins. Co., 585 F.3d 295, 299 (6th Cir. 2009) (citing Gismondi v. United Techs. Corp., 408 F.3d 295, 298 (6th Cir. 2005)). If the plan gives the administrator discretionary authority, a court applies the highly deferential "arbitrary and capricious" standard of review. Id.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Schwalm v. Guardian Life Ins. Co. of America, 626 F.3d 299, 308 (6th Cir.

2010) (internal quotation marks omitted) (quoting Shields v. Reader's Digest Ass'n, Inc., 331 F.3d 536, 541 (6th Cir. 2003)).  Even when a claimant has introduced evidence that might be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits because of the plan's provisions, then the decision is neither arbitrary nor capricious.  Id. (citing Williams v. Int'l Paper Co., 227 F.3d 706, 712 (6th Cir. 2000)).  Therefore, a reviewing court must uphold the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence."  Baker v. United Mine Workers of Am. Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

The parties do not dispute that the Plan grants discretionary authority to Sedgwick to determine benefits eligibility.  In fact, the Plan provides that "employee[s] must provide medical evidence, satisfactory to [Sedgwick] (third party administrator) that substantiates total disability, i.e. medical substantiation."  (A.R. 1697).  This language is sufficient to delegate discretionary authority to Sedgwick, which triggers the arbitrary and capricious standard of review.  See Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556-57 (6th Cir. 1998) (noting that language requiring satisfactory evidence "to the insurer" or "to the company" created a "clear grant of discretion").

However, Shumpert argues that a conflict of interest exists because "the administrator is both claim evaluator and claim payer."  (Doc. 23 at 10).  The general rule is that a conflict of interest arises when the administrator both determines eligibility for benefits and is responsible for paying such benefits.  See Glenn v. Metro. Life Ins. Co., 461 F.3d 660, 666 (6th Cir. 2006) (noting that such a "dual function creates an apparent conflict of interest").  In such a case, "the conflict must be weighed as a

'facto[r] in determining whether there is an abuse of discretion.'" Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (internal citation omitted). However, Sedgwick, the claim evaluator, is an independent third-party claims management service hired by GM. GM separately pays benefits. This is insufficient to establish a conflict of interest. See Morris v. Am. Electric Power Long-Term Disability Plan, 399 F. App'x 978, 982-83 (6th Cir. 2010) (finding no conflict of interest where employer pays benefits, but delegates authority to third-party claims administrator for eligibility determinations). In addition, Shumpert provides no other evidence that Sedgwick's determinations are tainted. Therefore, this factor is not entitled to any weight in the Court's analysis.

Shumpert also asserts that Michigan law prohibits discretionary clauses in insurance policies, citing Mich. Admin. Code r. 500.2202(b). Although prohibitive of discretionary clauses in insurance policies issued after July 1, 2007, the Plan at issue in this case is self-funded by GM (A.R. 1), and therefore outside the scope of the regulation. See Moskal v. Aetna Life Ins. Co., 2012 WL 71845 *3 (E.D. Mich. Jan. 10, 2012) (holding that Mich. Admin. Code r. 500.2202(b), (c) does not invalidate discretionary clause in self-funded employee welfare plan).

In sum, both of Shumpert's arguments are meritless, and the arbitrary and capricious standard of review applies.

### III. ANALYSIS

#### A. Plan Administrator's Decision

The Plan provides two levels of disability benefits. Initially, an employee may receive Sickness and Accident ("S&A") benefits if he "becomes wholly or continuously

disabled as a result of any injury or sickness so as to be prevented thereby from performing any and every duty of such employee's occupation" and is under the care of a licensed physician. (A.R. 1431). These benefits are payable for no more than 52 weeks. (A.R. 1433). Once S&A benefits expire, an employee may receive Extended Disability ("ED") benefits if they are "totally disabled." (A.R. 1438). "Totally disabled" means that the employee is "wholly prevented from engaging in regular employment or occupation" with GM "as a result of bodily injury or disease, either occupational or non-occupational in cause." (A.R. 1439). ED benefits terminate once the employee "no longer satisfies the disability requirement." (A.R. 1443). It is the employee's burden to continually "provide medical evidence, satisfactory to [Sedgwick] that substantiates total disability . . . ." (A.R. 1697).

Shumpert argues that GM's decision to terminate benefits is not supported by substantial evidence because it (1) disregarded Shumpert's symptoms, (2) discounted his treating physicians' opinions, and (3) did not take into account the Social Security award. In contrast, GM asserts that Dr. Kaiser found that Shumpert was not disabled, which is binding on all parties under the Plan. Regardless, Shumpert failed to meet his burden to provide evidence to substantiate his disability.

The record demonstrates that GM did not disregard Shumpert's symptoms or the opinions of Dr. Mirchandani, Dr. Fayyad, or Dr. Vidinas. None of those opinions are entitled to extra deference by the plan administrator. See Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003) (noting that plan administrators cannot "arbitrarily refuse to credit a claimant's reliable evidence," but also that courts cannot "require administrators automatically to accord special weight to the opinions of a claimant's

10

physician . . . ."). This is especially true where the claimant's treating physician opinions are conclusory or inconsistent with the physician's own treatment records. Crider v. Highmark Life Ins. Co., 458 F. Supp. 2d 487, 506 (W.D. Mich. 2006) (citations omitted).

In September 2008, Dr. Mirchandani indicated Shumpert complained of easy fatigability, headaches, and susceptibility to infection. (A.R. 361). Dr. Mirchandani diagnosed Shumpert with status post kidney transplant, hypertension, and proteinuria. (Id.) A month later, he stated that Shumpert is having trouble keeping up with the assemble line due to fatigue. (A.R. 378). Nine months later, Dr. Mirchandani sent Sedgwick a statement with identical patient complaints and diagnosis. However, this statement indicated Shumpert could perform sedentary work. (A.R. 990). In October 2009, Dr. Mirchandani sent a conclusory letter indicating that Shumpert could not work on the assembly line. (A.R. 191). In December 2009, he sent another conclusory letter stating that Shumpert could not work in any fashion. (A.R. 905).

None of the letters mention back pain or provide any evidence to support Dr. Mirchandani's opinions. During the peer-to-peer review, Dr. Mirchandani told Dr. Gross that Shumpert could work and that his kidney function was normal. (A.R. 974). Dr. Mirchandani also stated that Shumpert subjectively stated that he could not work on an assembly line, but that complaint was unsupported by objective medical evidence, contradicting his two previous letters. During the same time period, Shumpert underwent an IMO at the hands of Dr. Kaiser, which indicated that Shumpert could return to work and did not mention complaints of fatigue or back pain. (A.R. 94). A few months later, Dr. Gross also concluded that Shumpert was capable of work after speaking with Dr. Mirchandani. (A.R. 975). In light of the contradictory statements and

11

medical evidence available, Sedgwick reasonably gave little weight to Dr. Mirchandani's conclusory medical opinion and Shumpert's subjective complaints.

Sedgwick also reasonably discounted Dr. Fayyad's statements. Dr. Fayyad provided statements that Shumpert could not work based on Dr. Mirchandani's recommendation. (A.R. 1166). Dr. Fayyad confirmed over the phone that it was not because of back pain. A month later, Dr. Fayyad sent another statement indicating that Shumpert could perform sedentary work, but that his kidney medication causes fatigue and he has high levels of creatinine. (A.R. 986-87). However, Sedgwick discounted this opinion after Griffin determined that Shumpert's creatinine levels were normal. In addition, Dr. Fayyad based his conclusion on Dr. Mirchandani's diagnosis of high creatinine levels. Dr. Fayyad's report does not indicate he believes Shumpert should be restricted from working; rather, that Dr. Mirchandani "wants [Shumpert] to be on sick leave." (A.R. 987). Although it does state that Shumpert complains of back pain, no tests or clinical findings support this complaint. Consequently, Dr. Fayyad's opinion does little to support Shumpert's claim of disability for fatigue, back pain, or any kidney related condition, and Sedgwick reasonably afforded it little weight.

Contrary to Shumpert's argument, Sedgwick did afford weight to Dr. Vidinas' IMO, which concluded that Shumpert could not work due to back pain and chronic kidney disease. (A.R. 85-86). Based on that IMO, ED benefits were provisionally approved. (A.R. 257). However, Dr. Vidinas recommended that Shumpert be reevaluated in a month. Dr. Kaiser performed the follow-up IMO four months later, which made no mention of back pain, and was binding on all parties in accordance with

12

the Plan. (A.R. 93-94). Therefore, Sedgwick reasonably relied on the new IMO in determining that Shumpert failed to demonstrate total disability.

To the extent that Shumpert argues Sedgwick should have afforded weight to the union representative tasked with appealing on Shumpert's behalf, this argument is meritless. There is no evidence that the union representative has any medical training, and thus no weight is afforded to any statements regarding Shumpert's medical history.

Last, Shumpert's argument that the Social Security benefits award should have been a factor in his favor is unpersuasive. Generally, a finding of disability by the Social Security Administration ("SSA") does not "automatically entitle[] [a claimant] to benefits under an ERISA plan, since the plan's disability criteria may differ from the Social Security Administration's." DeLisle v. Sun Life Assur. Co of Canada, 558 F.3d 440, 445-46 (6th Cir. 2009) (citing Whitaker v. Hartford, 404 F.3d 947, 949 (6th Cir. 2005)). However, the decision will be a factor in favor of the claimant where the plan administrator encourages the claimant to apply for Social Security benefits and later discounts the award without explanation in its denial of benefits under an ERISA plan. See Bennett v. Kemper Nat. Servs., Inc., 514 F.3d 547, 554 (6th Cir. 2008).

Shumpert received his favorable determination in late 2010. Soon thereafter, GM received notification of the award. (A.R. 855). Although it is undisputed that Sedgwick did not consider the award in its denial of Shumpert's last appeal, there is no evidence that GM received the opinion detailing the decision. GM did not receive notice of the Social Security award until prior to Shumpert's fifth step (final) appeal, in which "[n]o new information was provided to support reversal of the (fourth step appeal) decision." (A.R. 873). There is also no evidence that Shumpert was encouraged to

13

apply for Social Security benefits. Although GM now seeks to recover overpayment, the Social Security award does not weigh in Shumpert's favor. See Leffew v. Ford Motor Co., 258 F. App'x 772, 779 (6th Cir. 2007) ("It is not necessary, however, that the plan administrator expressly distinguish a favorable SSA determination in denying disability benefits under the plan.") (citing Whitaker v. Hartford Life & Accident Ins. Co., 404 F.3d 947, 949 (6th Cir. 2005)).

In sum, there is substantial evidence in the record supporting the plan administrator's determination that Shumpert failed to substantiate his disability claim. The evidence submitted from Shumpert's treating physicians consists mostly of conclusory medical opinions. There is a lack of clinical findings supporting Shumpert's claims of back pain, fatigue, or kidney conditions severe enough to prevent him from performing his occupation or any occupation at GM Flint Metal. Sedgwick reasonably relied on the IMO from Dr. Kaiser and review of Dr. Gross, both of which determined Shumpert could work. Each time Shumpert supplemented his claim with evidence, Sedgwick properly considered the additional evidence and reevaluated whether Shumpert met the Plan definition for total disability. Consequently, as the decision was the result of a deliberate, principled reasoning process, the Court finds it is not arbitrary and capricious.

### B. Overpayment of Benefits

In its brief, GM argues that it is entitled to recover overpaid benefits in light of Shumpert's Social Security benefits award. However, GM failed to sufficiently raise this issue in its Motion to Affirm Administrator's Decision (Doc. 22). See Fed. R. Civ. P. 8(a). In addition, GM did not specify the amount of benefits it believes Shumpert must

repay. Claims to recover overpaid benefits under and ERISA plan are often pleaded as counterclaims and subject to Fed. R. Civ. P. 56(a). Consequently, if GM wishes to pursue this claim, it must file a proper motion and accompanying brief with this Court by May 2, 2014. Failure to do so will result in a waiver of its claim for any allegedly overpaid disability benefits under the Plan.

### IV. CONCLUSION

Accordingly, Defendant's motion is **GRANTED**, Plaintiff's motion is **DENIED**, and the decision of the plan administrator is **AFFIRMED**. **IT IS FURTHER ORDERED** that **DEFENDANT** file its motion for summary judgment on its counterclaim for overpayment of benefits by **MAY 2, 2014**.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


DATE: April 21, 2014

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

s/Bernadette M. Thebolt
Case Manager