**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MAURICE SHUMPERT,

        Plaintiff,

v.                                                    CASE NO. 2:12-cv-14786

GENERAL MOTORS LIFE AND                 HON. MARIANNE O. BATTANI
DISABILITY BENEFITS PROGRAM FOR
HOURLY EMPLOYEES,

        Defendant.
_____/

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

      Before the Court is Defendant General Motors Life and Disability Benefits Program for Hourly Employees' ("GM") Motion for Summary Judgment. (Doc. No. 33). The Court previously granted Defendant's motion for judgment on the administrative record with respect to liability, finding that it did not wrongfully terminate Plaintiff Maurice Shumpert's benefits under an employee welfare benefits plan subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendant now seeks repayment for benefits wrongfully paid to Plaintiff under the plan. The matter is fully briefed, and the Court finds that oral argument will not aid in the resolution of this matter. See E.D. Mich. LR 7.1(f)(2). For the reasons stated below, Defendant's motion is **GRANTED**.

**I.    BACKGROUND**

      On April 21, 2014, the Court granted GM's motion for judgment on the administrative record, finding that GM did not wrongfully terminate payment of disability benefits to Plaintiff Maurice Shumpert. (Doc. No. 28). As set out in the Court's prior

opinion, GM's employee welfare plan ("the Plan") is administered by Sedgwick, and

provides two levels of disability benefits:

> Initially, an employee may receive Sickness and Accident ("S&A") benefits
> if he "becomes wholly or continuously disabled as a result of any injury or
> sickness so as to be prevented thereby from performing any and every
> duty of such employee's occupation" and is under the care of a licensed
> physician.  (A.R. 1431).  These benefits are payable for no more than 52
> weeks.   (A.R. 1433).   Once S&A benefits expire, an employee may
> receive Extended Disability ("ED") benefits if they are "totally disabled."
> (A.R. 1438).   "Totally disabled" means that the employee is "wholly
> prevented from engaging in regular employment or occupation" with GM
> "as a result of bodily injury or disease, either occupational or non-
> occupational in cause."  (A.R. 1439).   ED benefits terminate once the
> employee "no longer satisfies the disability requirement."  (A.R. 1443).  It
> is the employee's burden to continually "provide medical evidence,
> satisfactory to [Sedgwick] that substantiates total disability . . . ."  (A.R.
> 1697).

(Doc. No. 28 at 9-10).

The Plan also provides for an offset in the event the beneficiary receives Social

Security Disability Insurance Benefits ("SSDIB"):

> Sickness and Accident Benefits otherwise payable for any period of
> disability shall be reduced by the weekly equivalent of any Disability
> Insurance Benefits or Retirement Insurance Benefits (Primary Insurance
> Amount only) to which the employee is entitled for the same period under
> the Federal Social Security Act or any future legislation providing similar
> benefits, except retirement benefits reduced because of age at which
> received.   For purposes of such reduction, the weekly equivalent of
> benefits paid on a monthly basis is computed by dividing the monthly
> benefit rate by 4.33.

> Any Disability Insurance Benefits or Retirement Insurance Benefits which
> are awarded retroactively shall be treated as having been received by the
> employee during the entire time period for which such benefits were
> payable and any overpayments of Sickness and Accident Benefits shall be
> calculated accordingly.

(A.R. 1436).   In addition, overpaid benefits must be repaid by the beneficiary in the

event of a retroactive award of SSDIB.  The Plan states, "[u]pon receipt of a notice of

award of [SSDIB], any overpayment of [S&A or ED benefits] caused by the retroactive award of DIB is to be repaid.  The amount of the overpayment will be based on the actual amount (Primary Insurance Amount) of such award."  (A.R. 1515-16).

On October 3, 2008, Shumpert signed a "Reimbursement Agreement," which provides:

> In the event of an award of Primary Disability Insurance Benefits by the Social Security Administration, I . . . voluntarily agree to repay a sum equal to the lesser of the total amount of any Primary Disability benefits payable to me and the total amount of Sickness and Accident and Extended Disability Benefits payable to me, for the same period . . . .

(A.R. 365).

From February 21, 2008 to February 25, 2009, Shumpert received S&A benefits. He then received ED benefits from February 26, 2009 to August 5, 2009.  In October 2010, GM received notice that Shumpert received a retroactive award of SSDIB, payable from March 1, 2008.  As a result, GM requested repayment of benefits in the amount of $30,325.14.  Shumpert does not dispute that he received SSDIB during the time in which he received benefits from GM, nor does he dispute the provisions of the Plan providing for offset and repayment of benefits.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  Rule 56 mandates summary judgment against a party who fails to establish the

existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**III.    ANALYSIS**

Under ERISA, a plan fiduciary may commence a civil action "to obtain other appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Shumpert does not challenge any of the above facts.  Instead, he asserts that GM's action to recover the overpaid benefits is not equitable in nature, and thus not authorized by ERISA.  However, Shumpert's argument is unpersuasive.

The Sixth Circuit has consistently held that plan fiduciaries may recover overpaid benefits when the terms of an ERISA plan so permit.  See Gilchrest v. UNUM Life Ins. Co. of Am., 255 F. App'x 38, 46 (6th Cir. 2007).  In Gilchrest, the beneficiary received SSDIB benefits, which resulted in an overpayment by the plan administrator.  Id. at 39. The plan permitted recovery of overpaid benefits, including SSDIB.  Id. at 45.   In affirming the district court's grant of summary judgment in favor of the plan fiduciary, the Sixth Circuit noted that "the Plan's overpayment provision asserts a right to recover from a specific fund distinct from [the plaintiff's] general assets – the fund being the overpayments themselves . . . ."  Id. at 45-46.  Thus, this satisfied the Supreme Court's interpretation of "appropriate equitable relief" pursuant to § 1132(a)(3)(B).  Id. at 44-46; see also Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212 (2002) (noting that equitable restitution involves "a constructive trust or an equitable lien" identifying "particular funds or property in the defendant's possession").

4

Like <u>Gilchrest</u>, the Plan in this case specifically provides for recovery of overpaid benefits as a result of a retroactive award of SSDIB.  The overpaid benefits constitute the "fund" from which GM seeks to recover.  Therefore, the remedy sought by GM is equitable in nature, not "simply an award of compensatory damages."  <u>Id.</u> at 44 (citing <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248 (1993)).

Moreover, Shumpert knew of the Plan provision when he signed the Reimbursement Agreement prior to receiving SSDIB.  He does not dispute the amount of overpayment, nor does he challenge the validity of the Plan provisions.  In addition, whether Shumpert is still in possession of the funds is of no import.  <u>See</u> <u>Helfman v. GE Group Life Assur. Co.</u>, 2010 WL 101453, at *1 (E.D. Mich. Jan. 6, 2010) ("[Plaintiff's] argument that he no longer has the overpaid benefits in his possession is unavailing.").  Thus, there is no genuine dispute of material fact, and GM is entitled to repayment of benefits in the amount of $30,325.14.

## IV.   CONCLUSION

Accordingly, Defendant's motion is **GRANTED**.

**IT IS SO ORDERED.**

Date:   November 10, 2014                      s/Marianne O. Battani
                                               MARIANNE O. BATTANI
                                               United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on November 10, 2014.

                                               s/ Kay Doaks
                                               Case Manager